### SIBLEY v DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE

Docket No. 80207. Argued January 6, 1988 (Calendar No. 3). Decided August 23, 1988.

Austin Sibley was awarded workers' compensation benefits under the Federal Employees' Compensation Act, 5 USC 8101 *et seq.*, for medical expenses and three-fourths of lost wages resulting from injuries suffered in an automobile accident in the course of his employment with the United States Postal Service. He also filed a claim for no-fault benefits with his insurer, the Detroit Automobile Inter-Insurance Exchange. In addition, a tort claim for noneconomic damages against the owner of the other vehicle involved in the accident resulted in a cash settlement. The federal government demanded reimbursement of benefits paid under the FECA from the settlement, which the plaintiff paid. The plaintiff then sought reimbursement of the monies paid to the federal government from the DAIIE. After reimbursement was denied, the plaintiff brought an action in the Wayne Circuit Court against the DAIIE, seeking reimbursement. The court, John H. Hausner, J., granted summary judgment for the defendant. The Court of Appeals, WAHLS, P.J., and R. B. BURNS and M. WARSHAWSKY, JJ., affirmed, finding no reason to treat FECA benefits differently from state workers' compensation benefits, and holding that the FECA benefits had been properly set off against the no-fault benefits (Docket No. 87376). The plaintiff appeals.

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held:*

Because the plaintiff was required by law to refund the FECA benefits he received, the benefits were not provided or required to be provided under the laws of any state or the federal government and should not be subtracted from the personal

REFERENCES

Am Jur 2d, Federal Employer's Liability and Compensation Acts § 90.

See the Index to Annotations under Federal Employees' Compensation Act; Indemnity; Insurance; Workers' Compensation.

protection insurance benefits otherwise available to the plaintiff under the no-fault act.

1. Section 3109(1) of the no-fault act provides that benefits provided or required to be provided under the laws of any state or the federal government are to be subtracted from personal protection insurance benefits otherwise payable under the act. The purpose underlying the provision is the reduction of the basic cost of insurance by requiring setoff of government benefits that duplicate no-fault benefits and the coördination of the benefits a victim may receive. The focus of analysis is on whether the benefits are duplicative. Not all benefits provided or required to be provided under the laws of any state or the federal government must be subtracted. The test is whether the benefits serve the same purpose as the no-fault benefits and are provided or required to be provided as a result of the same accident.

2. Under the no-fault act, "benefits provided" refers to benefits permanently provided. To the extent benefits are retrieved by an alternative source provider out of a worker's tort recovery, they cease to be benefits provided within the meaning of § 3109(1) of the act. Therefore, the amount of FECA benefits initially received by the plaintiff should not be subtracted from the personal protection insurance benefits otherwise available to the plaintiff.

Reversed and remanded.

156 Mich App 519; 402 NW2d 51 (1986) reversed.

INSURANCE — NO-FAULT — COÖRDINATION OF BENEFITS — REIMBURSEMENT.

Workers' compensation benefits received by a federal employee under the Federal Employees' Compensation Act, which were required to be reimbursed to the federal government from the proceeds of a tort settlement, were not benefits provided or required to be provided under the laws of any state or the federal government for purposes of the coördination of benefits provision of the no-fault act and were not subject to subtraction from personal protection insurance benefits otherwise available under the no-fault act (5 USC 8101 *et seq.;* MCL 500.3109[1]; MSA 24.13109[1]).

*Brent S. Hunt* for the plaintiff.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Martin & Schoolmaster* (by *Clair W. Hoehn*) and

*Gromek, Bendure & Thomas* (by *John A. Lydick,* of counsel) for the defendant.

Cavanagh, J. Several times this Court has determined whether § 3109(1) of the no-fault insurance act[1] requires various state and federal government benefits to be subtracted from no-fault benefits. In this case we must determine whether § 3109(1) applies to the benefits plaintiff received but was later required to refund under the Federal Employees' Compensation Act (FECA), 5 USC 8101 *et seq.* We hold that because plaintiff was required by law to refund the benefits he had received, those benefits were not "provided or required to be provided" and therefore should not be subtracted from the personal protection insurance benefits otherwise available to plaintiff under the no-fault insurance act.

I

The facts in this case were submitted to the trial court by the parties in a stipulated "Statement of Facts," which is summarized in the Court of Appeals opinion:

> On August 15, 1978, plaintiff was injured in an automobile accident during the course of his employment with the United States Postal Service. On the date of the accident, plaintiff was the owner of an automobile insured by defendant. That automobile was not involved in the accident.
>
> Plaintiff filed a workers' compensation claim against the federal government under the Federal Employees' Compensation Act (FECA). 5 USC 8101 *et seq.* The claim was honored and plaintiff was ultimately paid $17,221.87 by the federal government, representing all of his medical expenses and three-fourths of his lost wages.

[1] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

Plaintiff had also filed a claim with defendant for no-fault benefits. Defendant honored the claim, but, pursuant to § 3109 of the no-fault act, deducted from the no-fault benefits otherwise payable the benefits plaintiff received pursuant to FECA. Defendant ultimately paid $14,498.68, which represented lost wages not reimbursed under FECA.

Plaintiff also pursued a tort claim for noneconomic damages against the owner and driver of the other vehicle involved in the accident. See MCL 500.3135; MSA 24.13135. Plaintiff settled the claim for $32,500. Thereafter, the U. S. Department of Labor, Office of Workers' Compensation, demanded reimbursement of benefits paid under FECA from the amount received by plaintiff from the tort claim settlement. The department sought reimbursement under 5 USC 8132, which provides in pertinent part as follows:

"If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury."

On August 31, 1983, plaintiff repaid the Department of Labor the principal sum of $12,186.69 plus interest of $2,195.60. Thereafter, plaintiff sought reimbursement of this payment from defendant. Defendant denied the claim and this litigation ensued. The parties filed cross-motions for summary disposition and, on August 23, 1985, summary disposition was granted in favor

of defendant. [156 Mich App 519, 521-522; 402 NW2d 51 (1986).]

The Court of Appeals affirmed, finding no reason to treat FECA benefits differently from state workers' compensation benefits and holding that plaintiff's FECA benefits had been properly set off against his no-fault benefits.

We granted plaintiff's application for leave to appeal. 428 Mich 910 (1987).

II

Section 3109(1) of the no-fault insurance act provides that certain benefits must be subtracted from personal protection insurance benefits available under the act:

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

The purpose of § 3109(1) is to reduce the basic cost of insurance by requiring a setoff of those government benefits that duplicate no-fault benefits[2] and coördinating those benefits a victim may receive. The focus of the analysis is whether the benefits are duplicative.[3] Thus, "not *all* '[b]enefits provided or required to be provided under the laws of any state or the federal government' must be subtracted from no-fault personal protection insurance benefits otherwise due."[4]

---

[2] See *Tebo v Havlik,* 418 Mich 350, 367; 343 NW2d 181 (1984); *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544; 273 NW2d 829 (1979).

[3] *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984).

[4] *Id.,* p 573.

This Court formulated a test to determine whether particular benefits must be set off from no-fault benefits in *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984):

> We conclude that the correct test is: state or federal benefits "provided or required to be provided" must be deducted from no-fault benefits under § 3109(1) if they:
> 1) Serve the same purpose as the no-fault benefits, and
> 2) Are provided or are required to be provided as a result of the same accident.

Unfortunately, the *Jarosz* test did not really anticipate the question presented by these facts. We are confronted here with legislation conferring on the payor of workers' compensation benefits a right of complete recovery out of the worker's tort recovery—a situation not specifically dealt with or contemplated by our Legislature when it crafted our no-fault scheme.

The primary underlying theme of the automobile no-fault act is that the automobile insurer pays without any right of reimbursement out of any tort recovery. It is an important, but secondary, concept that where benefits are provided from other sources pursuant to state or federal law, the amount paid by the other source reduces the automobile insurer's responsibility. But to the extent that the reduction in the automobile insurer's responsibility is from a source that retrieves reimbursement from the injured person's tort recovery, the amount so retrieved should not be deemed "benefits provided" within the meaning of the automobile no-fault act relieving the primarily liable automobile insurer of its primary responsibility to pay full benefits without reduction by reason of any tort recovery. Were it to be other-

wise, the worker's tort recovery, contrary to the spirit of the automobile no-fault act, would be used, in effect, to reimburse the alternative source (the federal government) of the other "benefits provided" that substituted for automobile no-fault benefits.

Because the reimbursement here is provided for by federal law, which preëmpts state law, we cannot, as in *Great American Ins v Queen,* 410 Mich 73; 300 NW2d 895 (1980), bar the alternative source (the federal government) from recovering against and from the tort recovery what it paid the injured worker. In fairness, however, in order to prevent a worker injured in an automobile accident from, in effect, paying for his own work loss/medical benefits, we can require the automobile no-fault insurer to repay benefits to that extent, in order to effectuate the underlying policies of the automobile no-fault act.[5]

We are persuaded that when the automobile no-fault act speaks of benefits "provided," it means benefits permanently provided. To the extent that benefits paid are retrieved by the alternative source provider out of the worker's tort recovery, they at that point cease to be "benefits provided" within the meaning of § 3109(1) relieving the automobile no-fault insurer of liability to the extent of "benefits provided" by alternative sources pursuant to state or federal law.

Because plaintiff was ultimately required to refund the FECA benefits he had received, he was left without that compensation for his medical services and lost wages. Therefore, his only recourse for

[5] It is most unlikely that the Legislature intended that all persons injured in automobile accidents would receive full work loss and medical benefits without any reduction of any tort recovery they might obtain, excepting only those relatively small number of persons injured in an automobile accident in their employment by the federal government.

economic damages was to seek payment from his no-fault carrier. Because, in fact, only single recovery was available to plaintiff, there was no duplicative recovery.[6]

We find that § 3109(1) of the no-fault act does not apply in this case. Therefore, the amount plaintiff initially received in FECA benefits should not be subtracted from the personal protection insurance benefits otherwise available to plaintiff under the no-fault insurance act. Plaintiff is entitled to personal protection benefits plus interest. We therefore reverse the decision of the Court of Appeals and remand this case to the circuit court for entry of an order consistent with this opinion.

RILEY, C.J., and LEVIN, BRICKLEY, BOYLE, ARCHER, and GRIFFIN, JJ, concurred with CAVANAGH, J.

---

[6] See *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 641; 344 NW2d 773 (1984).