*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSITA ANN WILSON,

        Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

        Defendant-Appellee.

UNPUBLISHED
July 21, 2022

No. 356272
Oakland Circuit Court
LC No. 2019-178379-NF

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting defendant summary disposition, as well as the trial court order denying plaintiff's motion for reconsideration, in this no-fault action. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On January 24, 2019, plaintiff, at the time 71 years old, returned home from Best Buy, where she tried to get her television (TV) repaired. It was not snowing, and there was snow in her yard, but her driveway had been shoveled. She drove a minivan, and the TV was in the back of the car. Plaintiff parked in her driveway, exited the vehicle, and opened the back-passenger door on the driver's side to reach the TV. As she was leaning into the vehicle, she decided it would be easier to retrieve the TV from the passenger side. She straightened up, and the next thing she remembered was being on the ground. She did not realize that she had hit her head until she went inside and saw blood on her hands, and looked in the bathroom mirror and saw blood on her head. Plaintiff drove herself to the emergency room, and stayed in the hospital for a few days.

Plaintiff applied for benefits through defendant, her no-fault insurer, and was denied on the basis that her vehicle was parked, and no statutory exception to the preclusion of benefits applied. She therefore filed suit, alleging breach of contract and statutory obligation to provide no-fault benefits, as well as bad faith claims handling and tortious interference with a contractual relationship. She sought attorney fees for unreasonable delay or denial of coverage and treble damages. Defendant moved for summary disposition under MCR 2.116(C)(10), because no-fault

-1-

benefits do not apply when a parked vehicle is involved unless an exception applies, and the exception in MCL 500.3106(1)(b) for loading or unloading did not apply. The trial court agreed, and granted defendant summary disposition because there was no genuine issue of material fact that plaintiff was not in contact with the TV at the time of her injury. Plaintiff moved for reconsideration, which the trial court denied because plaintiff failed to demonstrate a palpable error and presented the same argument and issues previously considered by the court. Plaintiff appeals both orders.

## II. STANDARDS OF REVIEW

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a party's claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Glasker-Davis*, 333 Mich App at 229 (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Issues of statutory interpretation are reviewed de novo. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017).

> When interpreting statutes, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language. In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. [*Id*. (quotation marks and footnotes omitted).]

The decision of the trial court on a motion for reconsideration is reviewed for an abuse of discretion. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs when the decision results in an outcome outside the range of principled outcomes." *Jilek v Stockson (On Remand)*, 297 Mich App 663, 665; 825 NW2d 358 (2012) (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiff argues that the trial court erred in granting defendant summary disposition and denying plaintiff reconsideration because direct contact is not the test for determining whether plaintiff can receive coverage under the loading and unloading exception in MCL 600.3106(1)(b), she was in the process of unloading at the time of her accident, and a genuine issue of material fact exists regarding whether she was in direct contact with the TV. Alternatively, plaintiff argues that

the exception for occupying or alighting from a vehicle applied to provide plaintiff with coverage, MCL 600.3106(1)(c). We disagree.

The Michigan no-fault act, MCL 500.3101 *et seq.*, requires no-fault insurers to provide first-party injury protection for certain injuries related to a motor vehicle. *Kemp*, 500 Mich at 252. Specifically, the act provides that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). However, when a parked vehicle is involved, coverage is excluded for an injury unless a statutory exception applies. *Kemp*, 500 Mich at 252.

(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

* * *

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106(1)(b), (c).]

The *Kemp* Court provided a three-step analysis to determine no-fault coverage related to parked cars:

First, the claimant must demonstrate that his or her conduct fits one of the three exceptions of subsection 3106(1). Second, the claimant must show that the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*[.] Finally, the claimant must demonstrate that the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for. [*Kemp*, 500 Mich at 253 (quotation marks and footnotes omitted).]

Regarding steps two and three, the trial court held that "[w]hile Plaintiff may have sufficiently demonstrated that she was using her van in a transportational function and that there was a causal relationship, those steps do not matter if Plaintiff was not in contact with the property." Therefore, the issue in this case is whether plaintiff can demonstrate that her conduct fits within one of the statutory exceptions.

The trial court concluded that the exception in MCL 500.3106(1)(b) for loading and unloading did not apply to provide plaintiff with no-fault benefits because she was not in direct contact with the TV when she fell. This was not in error. "Plaintiff must show that his injury was caused by contact with the property being loaded or unloaded." *Kemp*, 500 Mich at 255. Here, plaintiff has provided no evidence that she was in contact with the TV at the time that she fell.

Plaintiff asserts that she testified at her deposition that she did not know whether she was in contact with the TV. This is a misrepresentation of the record. Plaintiff testified as follows:

> *Q*. Okay. Were you touching the TV at the time? Were you able to reach it at all?
>
> *A*. I was able to reach it, and I thought that might be easier—*I had let go* and I was going to—I guess I was—I don't know. *I had let go*. I planned on going around the other side. It would make sense to be a little easier, but I could reach it just fine. I just thought it would be easier to go to the other side. Then I— straightening up is the last thing I remember. [Emphasis added.]
>
> \* \* \*
>
> *Q*. All right. So you went to go grab the TV, you let go, you decided you were going to walk around to the other side. Do you remember anything else at that time?
>
> *A*. No, I just remember *letting go of the TV* and I don't remember anything after that. . . . [Emphasis added.]
>
> \* \* \*
>
> *Q*. Okay. If you recall, at the time you slipped, were you trying to remove anything at that time from your vehicle?
>
> *A*. No. I don't know if I slipped or what. Whatever it was, I don't remember. *I know I wasn't moving anything.* I had decided it would be better to go to the other side. I remember I still leaned inside the vehicle. [Emphasis added.]
>
> \* \* \*
>
> *Q*. I don't think I asked this specifically. When you fell, were you touching anything? Were you touching the vehicle at all at the time you fell?
>
> *A*. I don't know.
>
> [*Defense Counsel*]: Yeah, that was it.
>
> *A*. I really—I mean, that I don't know. I know I was leaning in, *I had let go of the television.* I was thinking about should I get it the other way and that was the last thing I'm aware of until I was on the cement. [Emphasis added.]

Therefore, despite plaintiff's assertions to the contrary, plaintiff clearly testified several times that she had let go of the TV at the time that she fell. She said that she had let go of the TV before defense counsel included, "you let go," in his questioning. Thus, plaintiff's argument that defense counsel misstated her testimony lacks merit. Plaintiff cannot show that her injury was "caused by contact with the property being loaded or unloaded." *Kemp*, 500 Mich at 255. As

such, the court applied the proper standard when analyzing this issue and properly granted defendant summary disposition under MCR 2.116(C)(10), because there was no genuine issue of material fact that plaintiff was not in contact with the TV at the time of her injury.

Alternatively, plaintiff argues that the exception for occupying, entering into, or alighting from the vehicle under MCL 500.3106(1)(c) applies to provide her with coverage. We disagree.

As noted above, no-fault benefits generally are not provided when a parked vehicle is involved unless an exception applies, one of which being when "the injury was sustained by a person while occupying, entering into, or alighting from the vehicle." MCL 500.3106(1)(c). "Entry does not occur when a person is simply preparing to enter a vehicle. Rather, entry occurs when a person touches or opens their car door." *Graves v Collier*, 335 Mich App 14, 23; 966 NW2d 229 (2020) (citations omitted). However, the plaintiff must have had the intention of entering the vehicle at the time that she opened the door. *Id*.

> With respect to MCL 500.3106(1)(c), "alight" means "to dismount from a horse, descend from a vehicle, etc." or "to settle or stay after descending; come to rest." *Random House Webster's College Dictionary* (1997). See also *New Shorter Oxford English Dictionary* (defining "alight" as "to descend and settle; come to earth from the air"). Moreover, that the injury must be sustained "while" alighting indicates that "alighting" does not occur in a single moment but occurs as the result of a process. The process begins when a person initiates the descent from a vehicle and is completed when an individual has effectively "descended[ed] from a vehicle" and has "come to rest"—when one has successfully transferred full control of one's movement from reliance upon the vehicle to one's body. This is typically accomplished when "both feet are planted firmly on the ground." [*Frazier v Allstate Ins Co*, 490 Mich 381, 385-386; 808 NW2d 450 (2011) (footnotes and citation omitted).]

It is clear that plaintiff had already alighted from her vehicle at the time that her injury occurred. *Id*. at 387. She exited from the driver's seat and went to the back-passenger door on the driver's side to retrieve the TV. There is no evidence that she reentered the vehicle as to occupy it, and therefore no evidence that she thereafter alighted from the vehicle a second time. There is no evidence that she took either foot off the ground. Rather, she testified that she let go of the TV, was not touching anything, stood up, and the next thing she remembered, she was on the ground. There is no evidence that plaintiff had any intent to reenter the vehicle. *Graves*, 335 Mich App at 23. Her purpose of opening the back-passenger door was to take out the TV. Therefore, plaintiff was not in the process of occupying, entering, or alighting from her vehicle at the time of her injury, and the exception in MCL 500.3106(1)(c) does not apply. The trial court did not err by granting defendant summary disposition, and based on these conclusions, the trial court did not abuse its discretion by denying plaintiff's motion for reconsideration.

Affirmed. Having prevailed in full, defendant may tax costs. MCR 7.219.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood